MRS. BERTHA BRINKLEY V. STATE.

No. 24614. April 5, 1950.

*E. T. Miller, Simpson, Clayton and Fullingim* (all acting by *E. A. Simpson*, of counsel) Amarillo, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

GRAVES, Judge.

This is a conviction for perjury alleged to have been committed by appellant in Cause No. 7939, State of Texas vs. Orla L. Brinkley, in the District Court of Potter County, wherein the said Orla L. Brinkley was charged with the murder of a child. The indictment duly alleged the trial in said No. 7939, and after such preliminaries, it alleges that in said trial the appellant was administered the oath, it then having become material as to whether Orla L. Brinkley was at his home on August 30, 1948, the date the child died from multiple injuries. That portion of the indictment reads as follows:

"WHEREUPON it then became and was a material issue before said judge and jury in the trial of said judicial proceeding, whether or not the said Orla L. Brinkley was upon the premises of the private residence located at 3616 East 12th Street in the City of Amarillo, Potter County, Texas, between the hours of 3:00 o'clock P.M. and 4:00 o'clock P.M. on the afternoon of August 30th, 1948."

The indictment then proceeds to set forth the testimony of appellant given in that murder trial, in which she swore under oath that between the hours of 3:00 and 4:00 o'clock on that day, she and her son (the accused in the murder trial) were not at her son's home, but were at another and different place. The state's testimony in that murder trial was that the accused, Orla L. Brinkley, was at his home on August 30th, 1948, between the hours of 3:00 and 4:00 o'clock P.M., and that he took his twenty months' old child into the garage thereon, and loud licks and a child's screams were heard therefrom; and that this little child died that night from multiple wounds on its

body. The materiality of such testimony was alleged in said indictment as follows:

"WHICH SAID STATEMENT AND TESTIMONY, so given in evidence by the said Mrs. Bertha Brinkley, was material to the issues in said cause, in that the State of Texas, as plaintiff, had in said cause charged the said Orla L. Brinkley by indictment with having, on or about the 30th day of August, 1948, in the County of Potter and State of Texas, killed and murdered Joseph Michael Getz with a means and instruments to the grand jurors unknown, and with a flexible instrument and with a strap, to which said indictment the said Orla L. Brinkley had plead 'not guilty', and issue was duly joined."

And further:

"AND WHEREAS the State of Texas, as plaintiff, did by said pleading and proof make an issue of the fact as to whether or not the defendant, Orla L. Brinkley, was on the premises and in the back yard and the garage of the residence at 3616 East 12th Street, known as the Brinkley home, between 3:00 and 4:00 o'clock on the said 30th day of August, 1948, which said fact was material to said prosecution."

"AND WHEREAS the testimony given by the above named defendant, Mrs. Bertha Brinkley, tended to falsely establish an alibi for the defendant, Orla L. Brinkley, and to remove him from the scene of the alleged crime for which he was being prosecuted, and was material testimony in said cause."

The indictment then alleges the falsity of the statement by appellant that her son was at another and different place from his home on such date at such time.

It is contended that these allegations are vague, indefinite and inconclusive in many respects; mainly, however, because it is alleged that the material issue between the state and the said Orla L. Brinkley in such case was *whether or not* Brinkley was at his home on said date between 3:00 and 4:00 o'clock p.m., on the date the child died. It is contended that the phrase, "whether or not" renders the pleading negative in its effect, is in the alternative, and was not the material matter at issue therein.

We are cited to the case of Morris v. State, 83 Tex. Cr. R. 521, 204 S. W. 106, in which the indictment reads in part as follows:

"It 'was a material issue before said Judge and jury in the

trial of said judicial proceeding as to whether or not the said Elmo Clark was in Travis County, Tex., and at the place where an assault was committed on E. W. Patterson, which place was about six miles west of Austin in Travis County, Tex., and occurred on Monday, November 13, 1916, about 4 o'clock p. m. And the said Julius Morris did then and there before the said judge and jury upon the trial of said cause, under the sanction of said oath administered to him as aforesaid, deliberately and willfully state and testify that said Elmo Clark was seen by him, the said Julius Morris, in the neighborhood of Miller's store in Bastrop County, Tex., on Monday, November 13, 1916.' —which statement is alleged to be material. The traverse reads as follows:

" 'Whereas, in truth and in fact, the said Elmo Clark was about six miles west of Austin, Travis County, Tex., at the place where an assault was committed on E. W. Patterson on the said 13th day of November, 1916, at about 4 o'clock p.m.' "

"We are of opinion that under the authority of Gallegos v. State, 50 Tex. Cr. R. 190, 95 S.W. 123, Maddox v. State, 28 Tex. App., 533, 13 S.W. 866, and Scott v. State, 75 Tex. Cr. R. 396, 171 S.W. 243, this indictment is not sufficient. See, also, Donohoe v. State, 14 Tex. App. 643; Lamar v. State, 49 Tex. Cr.R. 565, 95 S.W. 509, and Miller v. State, 43 Tex.Cr.R. 368, 65 S. W. 908. It was not material and could not be considered so under these authorities as to 'whether or not' Elmo Clark was at the place where Patterson was alleged to have been assaulted. That statement could not affect the accused, as we understand these decisions, whether Clark was there or whether he was not there. If Elmo Clark was the man sought to be shown by the facts who assaulted Patterson, and appellant was testifying to an alibi for Clark, the indictment should have so charged. The materiality of the question would be that the appellant swore that Clark was in Bastrop county at the time the assault was made upon Patterson by Clark at the point where the assault was made. It was not material as to 'whether or not' these conditions existed. The materiality would be that he was not present and committed the assault. If appellant testified falsely that Clark was in Bastrop county when Clark assaulted Patterson six miles west of Austin, this would be material.

"The judgment will be reversed and the cause dismissed."

We have read the above cited cases and confess our inability to understand the reasoning therein. The cited cases do not bear out the proposition that the phrase "or not" would render

the indictment vague, uncertain and negative in its allegation relative to the material matter at issue.

Undoubtedly the matter at issue therein at such trial was whether the accused, Orla L. Brinkley, was present at the time and place the baby was alleged to have been beaten or whether he was not there present at such time. The state contended that he was thus present; the accused, Orla L. Brinkley, contended he was not present at such place at such time and therefore could not have killed such child. The appellant's testimony became material in that she swore he was not there but was at another place at such time. The issue was material as to whether he was at such scene at the time of the beating of the child, or whether he was not at such scene. There could not be a material issue unless there were two basic contrary ideas there, and both ideas to the issue are found in the phrase "whether or not."

Again, it is contended that allegations of how the matter complained of herein became material can be alleged in more than one way. It is held in 41 Amer. Jur. p. 25, as follows: "Two modes are generally recognized by which the materiality of the alleged false statements may be shown in a pleading charging perjury: (1) by setting forth the nature of the issue and the evidence given thereon, so that as a matter of law it may be said the testimony on which the perjury is assigned is material to the issue; (2) by showing an action at issue in a court of competent jurisdiction, the testimony given, coupled with the averment that it was material to the issue. Both methods may be employed in the same indictment."

It is worthy of note that the testimony of appellant given at the trial of Orla L. Brinkley, in so far as it affected the issue, is incorporated in the indictment herein, and under 21 R. C. L., p. 268, as herein below quoted, we suggest that the materiality of such testimony of appellant is shown, and that is, that at the time and place testified to by Mrs. Keesee, and other state's witnesses, which testimony is set forth in the indictment, appellant's testimony alleged herein to be false, shows that Orla L. Brinkley was not at the place where the child received its beating and thereby shows that he was at a different place at such time. We quote from 21 R. C. L., p. 268, sec. 14, as follows:

"It is requisite that the materiality of the false swearing to the issue or point of inquiry should appear either by a general averment or by the facts set forth, and an averment that 'it became and was material to ascertain the truth of the matter hereinafter alleged to have been sworn to' is not a good averment

of materiality. Two modes are recognized by which the materiality of the alleged false statements may be shown in a pleading charging perjury; (1) by setting forth the nature of the issue and the evidence given thereon, so that as a matter of law it may be said the testimony on which the perjury is assigned is material to the issue; (2) by showing an action at issue in a court of competent jurisdiction, the testimony given, coupled with the averment that it was not material to the issue."

We find practically the same as just above quoted in the annotation of State v. Dunn, 80 A. L. R. p. 1443, with a long list of Texas cases on page 1445, as well as the late case of Carter v. State, 140 Tex. Cr. R. 324, 144 S. W. (2d) 582, and cases there cited.

We are not impressed with the contention of the invalidity of the indictment relative to the use of the phrase "whether or not". We are of the opinion that the issue raised was whether or not the accused son of appellant was at his home at a certain hour, it being the time alleged by the state when the child received its fatal beating. This was recognized by Orla L. Brinkley, and in order to show that he was not at his home at such time, his mother testified he was not there but was at another and different place at such time.

We think it is clear from the indictment as a whole that the issue joined was whether Orla L. Brinkley was present as alleged or whether he was not present, as sworn to by appellant, such absence from the scene of this beating being shown by appellant's testimony that her son was at another and different place at such time, thus leading to an inescapable conclusion that he did not and could not have administered the beating of this child. We think this indictment is sufficient to charge the offense of perjury in such trial of Orla L. Brinkley; and in so far as Morris v. State, 204 S. W. 106, and cases there cited hold a different doctrine as based upon the use of the phrase "whether or not" in alleging the issue joined therein, they are overruled.

Bill No. 3 relates to a portion of the trial court's charge in which he instructed the jury that "a false statement made through inadvertence, accident or mistake is not perjury." It is claimed that the phrase "or under agitation" should have been used instead of the word "accident" in such phrase. It is true that the statute, Art. 303, Vernon's P. C., does use the words "under agitation" but we think the word "mistake" has

a broader significance than the statutory word "agitation" and see no serious injury but rather a benefit to the appellant by the word used. It is also noted from an inspection of the record that no agitation was shown nor is evident on appellant's part.

Bill No. 4 complains of the reading before the jury by the state of the indictment in full against Orla L. Brinkley in which he was charged in six counts therein with the killing of this child. Prior to the reading of such indictment, occupying about four pages of the transcript, appellant's attorney made the following proffered stipulation:

"MR. SIMPSON: Then, if I understand, in the face of our judicial admission that Orla L. Brinkley was indicted in this court by indictment duly returned in Cause No. 7939, on the 4th day of October, 1948, for the offense of murdering Joseph Michael Getz,—and we will further stipulate that it was by striking him with a strap or flexible instrument, or with a stick, or with a switch, or with an instrument to the grand jury unknown,—and we again say that we will stipulate he was later tried and acquitted of this."

We think such stipulation, while rather incomplete, was sufficient to have shown the fact that the statements made under oath at the Orla L. Brinkley trial were made in a proper judicial proceeding and left no need for the full reading of this six-count indictment.

Bill No. 5 relates to an effort to have the trial court exclude certain portions of such indictment of Orla L. Brinkley relative to the manner of and means by which said child was alleged to have been killed. This bill is covered by our ruling on Bill No. 4. If same was admissible at all, it was admissible in its entirety.

Bill No. 6 relates to the fact that the private prosecutor, while questioning a state's witness, held in his hand a transcription of the reporter's notes of the testimony given by such witness in the Orla L. Brinkley trial. These notes were not further mentioned in said bill. It is not shown that they were introduced, nor read to the jury, nor further used, save as above mentioned. We see no error shown in this bill.

Bill No. 7 relates to a question propounded to the state's witness, Mrs. Keese, after she had finished her testimony in this cause, when she was asked if she testified in the Orla L. Brinkley case, and she answered that she had so testified. She was

then asked if she had testified in this cause substantially as she had testified in the Orla L. Brinkley case, and over appellant's objection, she answered the question, "Yes." While we do not think the witness should have been allowed to compare her present testimony with that given by her on the previous trial, still we see no substantial injury therefrom.

Bill No. 8 relates to a question to Dr. T. P. Churchill, which seems to have been asked while he was on the witness stand and had completed his testimony. He was then asked by the state if the document in the hands of the questioner was a transcript of the testimony given in the Orla L. Brinkley trial, and if he had read the same, to which he answered, "Yes." It seems that the attorneys on each side had previously agreed that a transcript of the testimony given on the previous trial was a true and correct transcript thereof; and since this witness went no further in this matter other than to admit that he had read such transcript of his testimony, we see no error shown.

Bill No. 9 relates to a remark evidently made to the judge in the presence of the jury, and under the circumstances we see no particular prospective damage therefrom, especially under the prompt instruction of the careful trial judge.

Bill No. 10 is of like character as No. 9 and is overruled; and Bill No. 11 is also overruled.

Bill No. 12 relates to a colloquy between the attorneys, and while it should not have taken place, still we think the trial court handled the same so that no possible injury accrued to the appellant.

Bill No. 13 relates to an effort upon the part of the attorney representing the state to introduce in evidence the trial court's charge in the Orla L. Brinkley case. This was not permitted by the court, although the private prosecutor, when offering same to the court, stated: "This is my thought along that line, the Court charged on alibi and on aggravated assault." Naught further was said relative thereto, but upon offering such statement, appellant objected thereto, and the court finally refused to let such charge be read to the jury. Whether such charge was admissible or not is not before us, but merely the statement made to the court, and the seriousness of such remark does not impress this court.

474

In Bill No. 14 we find that the trial court did not admit into evidence the complained of charge. But the basis of this bill is the introduction before the court only of the whole of the testimony of Mrs. Keese in the Orla L. Brinkley trial, which was not read to the jury, but seems only to have been given to the judge for the limited purpose of showing the materiality of appellant's testimony in the trial of her son. We confess that we are unable in such bill to find any reason to predicate error herein, the qualification evidencing the fact that the court alone had such evidence, and it was not read to the jury.

Bill No. 15 shows that the objectionable question was withdrawn and not answered.

Bill No. 16 relates to the questioning of a defense witness by the state on cross-examination wherein the private prosecutor was using the transcribed testimony of such witness in the Orla L. Brinkley trial in questioning such defense witness. We think such was admissible on cross-examination. The witness supported in his testimony the appellant in her alibi testimony relative to the whereabouts of her son at the time of the injuries to the child. We think such cross-examination was permissible in that he supported appellant in her testimony before the previous jury, such testimony being the basis of this indictment for perjury.

To the same ruling is Bill No. 17, it referring to testimony given by the same witness before the grand jury relative to the same subject.

Bill No. 20 relates to certain testimony given by a witness, Mrs. Marvin Wellman, which shows that Orla L. Brinkley was married to the mother of the deceased child about two weeks after the death of the child and after the date of its alleged beating. This would have been a serious error, we think, except for the fact that appellant placed Mrs. Betty Brinkley, the mother of the deceased, upon the stand, who testified to the same thing in substance relative to her marriage to Orla L. Brinkley about two weeks after the child's death in a "ceremonial marriage." This testimony from Mrs. Wellman was not admissible, and was doubtless prejudicial and could have been used by the jury to the damage of Orla L. Brinkley, but we see no element of relevancy therein to this perjury trial. However, the same testimony having been introduced by appellant, we think this error is not the subject of a fair objection at this time.

Bill No. 21 is to a further witness testifying to such marriage as is shown in Bill No. 20, and is governed by the same ruling.

Bill No. 22 reflects the same situation concerning this belated marriage as is shown by questions to appellant herself while on the witness stand. It merely shows that Orla L. Brinkley and Betty Brinkley, the mother of the deceased, were known by some as man and wife but were not married until two weeks after the death of the child and before the Orla L. Brinkley trial. This might possibly show some scheming on the part of Orla L. Brinkley, but surely was not chargeable to the appellant under this record.

Again, in Bill No. 23 this question relative to the ceremonial marriage of Orla L. Brinkley and the mother of the deceased came up and was the basis of this bill. However, appellant's action in offering such testimony herself renders of no avail the purported error shown therein.

Bill No. 24 relates to an objection of a state's witness testifying that as she passed the Brinkley home she heard a "blood-curdling scream," and later such statement was corrected to "a mournful scream," a difference from an "ordinary scream of a child"—as of a child at play. This bill then proceeds as follows:

"MR. NIX: Those are matters of common knowledge, and instinct tells the mother, she in particular, and anybody else, in fact, when a child is in mortal anguish, and what is happening to it."

This last statement was also objected to on many grounds, and the trial court sustained such objection and instructed the jury not to consider such remarks, but notwithstanding such ruling and instruction, appellant reserved an exception to such remarks. It will be noted that three sets of exceptions are incorporated in this one bill: one to the "blood-curdling scream," another to the "mournful scream," like the scream of a child, and still another to the question:

"Did the scream you heard seem to be a scream of mortal anguish, that went beyond the ordinary whipping of a child?"

An objection to this last question was sustained, and it was not answered, but an exception was reserved to the asking of such question. Again, there was objection to the following question:

"Was there any difference in that scream, and the ordinary scream of a child at play?"

At this point the above-quoted remarks of Mr. Nix were made and became the basis of a further exception.

We find this bill in a peculiar condition. Undoubtedly this is a multifarious bill and contains four matters in which objections were made and exceptions reserved thereto. We do find, however, the following certification above the trial court's signature of this bill:

"The Court certifies further that in his opinion the Bill is not multifarious or duplicitous, and should not be so regarded by the Court of Criminal Appeals because it all deals with the same transaction, and is necessary to show it in the form it is shown, in order to correctly picture the transaction complained of."

We remain of the opinion that this bill is multifarious and should not be considered.

Bill No. 25 relates to the cross-examination of Mrs. (Betty) Orla L. Brinkley. It seems that Mrs. Betty Brinkley was divorced from a man named Getz on July 19, 1948; that she had six children; that on July 25, 1948, she began living with Orla L. Brinkley as his common law wife, and that two weeks after the baby's death (which occurred on August 30, 1948), she was married in a "ceremonial marriage" to Orla L. Brinkley on September 18, 1948, in New Mexico. This bill is rather vague and indefinite and does not impress us with any serious error, especially in view of the fact that appellant's attorney had already interrogated her relative to such matters.

Bill No. 26 relates to the cross-examination of Mrs. Betty Brinkley in which she was asked relative to how many children she had borne, and where they were at the time of the trial. The deceased was one of her children, and the location and health of the remaining children would have but little bearing, if any, on this cause either one way or another, and their location should have no bearing on this case.

The complaint set forth in Bill No. 27 is ruled by what we have said relative to Bill No. 26. However, the complained of remarks of the private prosecutor should not have been made. In a spirit of fairness, the testimony might be said to show an evident lack of attachment to these six children of the mother,

but hardly to have called for the following remark of such prosecutor:

"I am entitled to trac*t* these children. They have brought toys and put on a volume of testimony to show how these people loved these children, and I will show that they had those babies, and gave them away like pups or kittens, and I want to prove——."

Whereupon the court said:

"I think that is the most outrageous thing for a lawyer to say in court. I will instruct the jury not to consider that statement. Don't use any more talk like that in this trial."

Testimony relative to these children and their treatment and the consideration given them by the mother of the dead child seems to be too remote to have any bearing on the truth or falsity of appellant's testimony as to an alibi for her son. Regardless of such, we think the remarks complained of should not have been made, and were not conducive to a fair trial of appellant for the offense of perjury.

Bill No. 28 concerns a remark of the district attorney relative to the failure of Orla L. Brinkley to appear and tell the jury where he was between the hours of 3:00 and 4:00 o'clock p. m. on the day of the child's death. He was not on trial herein. We fail to see the materiality of much of the statement objected to, a portion of which should not have been made.

We find Bill No. 29 relates to a certain argument of the private prosecutor. The remarks were not germane to the trial of this cause.

Bills Nos. 30, 31 and 32 relate to exceptions to the argument of the private prosecutor. A portion of such argument seems to be inflammatory and should not have been indulged in. It is always best and proper to argue the facts as clearly as possible and not indulge in matters outside the record, nor attempt to inflame the minds of the jury.

We have found this record to contain many errors, some of them minor ones, but in the aggregate, we are convinced that this cause should be reversed and remanded. While the state's witnesses stoutly and bravely maintained themselves, many witnesses, some of unimpeached integrity, testified to a perfect alibi for Orla L. Brinkly at the time it was shown by the state that he was beating this little child and thus supporting

the appellant's statement. Taking such a fact with the many errors shown herein, we have concluded that the cause of justice will be served by reversing this cause and remanding same for a new trial, and it is so ordered.